Robert FRASER, Jr., Plaintiff-Appellant,

v.

MAGIC CHEF–FOOD GIANT MARKETS, INC., Defendant-Appellee.

No. 15204.

United States Court of Appeals Sixth Circuit.

Dec. 9, 1963.

Jack G. Day, Cleveland, Ohio (Bernard A. Berkman, Larry S. Gordon, Cleveland, Ohio, on the brief), for appellant.

William J. Isaacson, New York (Morris Berick, Marvin S. Zelman; Burke, Haber & Berick, Cleveland, Ohio, Milton Kunen, Frederick R. Livingston; Kaye, Scholer, Fierman, Hays & Handler, New York City, on the brief), for appellee.

Before MILLER, CECIL and PHILLIPS, Circuit Judges.

CECIL, Circuit Judge.

This action was brought in the Common Pleas Court of Cuyahoga County, Ohio, by Robert Fraser, Jr., on behalf of himself and fellow employees of Magic Chef-Food Giant Markets, Inc., to recover wages in excess of $1,000,000. The action was removed to the United States District Court for the Northern District of Ohio, on motion of the defendant by virtue of diversity of citizenship. (Sec. 1332, Title 28 U.S.C.) Federal question jurisdiction (Sec. 1331, Title 28 U.S.C.) could also have been invoked under Sec. 301 of the Labor Management Relations Act (Sec. 185, Title 29 U.S.C.). Smith v. Evening News Assn., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246; International Union, United Automobile, Aircraft & Agricultural Implement Workers of America, U.A.W., A.F.L.-C.I.O. v. Textron, Inc., 312 F.2d 688, C.A.6.

The employees' claim arises out of a collective bargaining agreement between Magic Chef, Inc., and Mechanics Educa-

tional Society of America, Local 72, AFL-CIO, hereinafter called the Union. The name of Magic Chef, Inc., was changed to Magic Chef-Food Giant Markets, Inc., the appellee in this appeal. The name has again been changed to Food Giant Markets, Inc. It will be referred to herein as Magic Chef or the Company. Robert Fraser, Jr., will be referred to as the appellant.

This litigation grows out of the operation of a plant in Cleveland by Magic Chef. The Union had been the exclusive bargaining agent for the production and maintenance employees of Magic Chef since 1954. In April 1956, a new collective bargaining agreement was entered into, retroactive to March 1, 1956, and terminable on May 1, 1957. While this contract was in effect, the company requested the Union to enter into a new three-year contract which would supersede the contract then in effect.

The Company was engaged in the manufacture and sale of commercial and domestic cooking equipment and oil and gas space heaters. The Cleveland plant was engaged primarily in the manufacture of commercial cooking equipment. Gas and oil heaters were manufactured in a plant at St. Louis. The Company contemplated closing the St. Louis plant and moving its operations to the Cleveland plant. Business had not been good and other plants of the Company had already been closed. In order to undertake the expense of moving from St. Louis to Cleveland the Company de-

sired a longer term contract with the Union on more favorable terms to the Company. A new contract was agreed upon effective October 1, 1956, with an expiration date of October 1, 1959. On September 9, 1957, the Company notified the Union and the employees covered by the collective bargaining agreement that it would close the Cleveland plant on October 31, 1957, because of its inability to "obtain adequate profits."

The action on behalf of the employees is to recover the wages that they would have received if the Company had continued to operate throughout the duration of the contract. The rights of the parties must be determined under the contract of October 1, 1956. Magic Chef moved for a summary judgment and the appellant filed a cross-motion for summary judgment. The district judge sustained the motion of Magic Chef and dismissed the complaint. This appeal followed.

The appellant contends that under the express terms of the contract Magic Chef was under the affirmative duty to remain in business, maintain operations and continue the employment of members of the Union. Accordingly, he claims that the action of the Company in closing the Cleveland plant and terminating the employment of appellant and other employees was a breach of contract.

■ Articles X, XXI and XXII are the pertinent portions of the contract upon which the appellant relies.[1] The contract

1. "ARTICLE X. MANAGEMENT. The management of the works, the direction of the working forces and affairs of the Company, including the right to hire, suspend or discharge for cause, and the right to relieve employees from duty because of lack of work, or other legitimate reasons, such as material shortage, failure to observe shop rules and regulations, machine breakdowns, are vested exclusively in the Company; provided that this will not be used for the purpose of discrimination against any member of the Union, and provided further, that the matter of relieving employees from duty because of lack of work and rehiring shall be in accordance with Article VIII cov-

ering seniority, provided that the right to rehire, suspend or discharge for cause shall be subject to Article IX.

"ARTICLE XXI. AMENDMENTS BY MUTUAL AGREEMENT. Changes in economic conditions or other unforeseen contingencies may cause either the Union or the Company to desire modification in this Agreement before the time of its expiration or the parties may find that a specified provision contained herein is unworkable or impractical in its application. Consequently, either party may give to the other written notice of its desire to change the terms of this Agreement by adding, deleting or modifying one or more provisions, in which

is governed by federal labor law. Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593; Smith v. Evening News Assn., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246.

Article X of the contract is a rather standard management rights clause. It contains no provision for or reservation of the right to discontinue business. It is silent on the matter. We agree with the statement of the trial judge: "While it is true that a management rights clause cannot be used to destroy rights granted by other provisions, it is also true that the clause is never intended as a comprehensive enumeration of the rights of management whose effect is to forfeit by silence any rights not expressly reserved. This would place an intolerable burden upon the draftsman of the agreement. Its operation is the reverse of that proposition." There is no merit to the argument of the appellant that because the Company was not given the express right to discontinue operations in this clause of the contract the right did not exist.

Article XXII is the duration clause of the agreement. The significance of it is that so long as an employer-employee relationship exists, the rights and obligations of the parties are governed by it.

The appellant seeks to fortify his position by Article XXI of the contract which reads in part: "Changes in economic conditions or other unforeseen contingencies may cause either the Union or the Company to desire modification in this agreement. * * *" We cannot read into this clause any obligation on the part of the Company to continue in business. As the trial judge said: "It would seem elementary drafts-

manship to state in very clear terms any provision whose operation would depart so radically from common practice as the interpretation which the plaintiff urges here."

The question then arises as to whether the collective bargaining agreement, which is the subject of this action, is a contract of employment. In J. I. Case Co. v. N. L. R. B., 321 U.S. 332, at p. 334, 64 S.Ct. 576, at p. 579, 88 L.Ed. 762, the Court said: "Contract in labor law is a term the implications of which must be determined from the connection in which it appears. Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment."

Rights of employees under a collective bargaining agreement presuppose an employer-employee relationship. A collective bargaining agreement, in ordinary usage and terminology, does not create an employer-employee relationship nor does it guarantee the continuance of one. Employees' rights under such a contract do not survive a discontinuance of business and a termination of operations. See Local Lodge 2040, I. A. M. v. Servel, Inc., 268 F.2d 692, C.A.7, cert. den., 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120; Oddie v. Ross Gear & Tool Co., 305 F.2d 143, C.A.6, cert. den., 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275; Elder v. New York Central R. Co., 152 F.2d 361, C.A.

event the parties shall meet promptly for discussion of such proposed change. However, if no agreement is reached with respect thereto, this Agreement shall continue in effect without change until its expiration date.
"ARTICLE XXII. DURATION. This Agreement shall be in full force and ef-

fect from October 1, 1956, to October 1, 1959, and shall be considered as renewed for successive periods of one (1) year thereafter, unless at least sixty (60) days prior to the date of expiration in any year, written notice is given by one party to the other, stating that it desires termination of the Agreement. * * *"

6; United States Steel Corp. v. Nichols, 229 F.2d 396, 56 A.L.R.2d 980, C.A.6, cert. den., 351 U.S. 950, 76 S.Ct. 846, 100 L.Ed. 1474.

Underlying the argument of counsel for the appellant is the suggestion or inference that the consideration for canceling the old contract and entering into a new one was that the employees were to be continuously employed throughout the duration of the collective bargaining agreement. This reasoning is not supported by the facts. Parties to a contract may amend, modify or cancel a contract in such manner as is agreeable to them. Here the parties cancelled the old contract and entered into a new one which expressly provided that it superseded the old one. The new contract, the subject of this litigation, is clear and unambiguous. It contains no provision which could be interpreted as a limitation on the right of the Company to discontinue business and to close its Cleveland plant. The contract cannot be enlarged by oral testimony.

The judgment of the District Court is affirmed.