**AMERICAN BAKERY AND CONFECTIONERY WORKERS INTERNATIONAL UNION, LOCAL UNION NO. 12, AFL–CIO, an unincorporated labor organization, and Local 485 of Bakery Drivers, Plaintiffs,**

v.

**LIBERTY BAKING COMPANY, a corporation, and Noramco, Inc., a corporation, Defendants.**

**Civ. A. No. 65–599.**

United States District Court
W. D. Pennsylvania.
June 17, 1965.

---

Wilner, Wilner & Kuhn, Pittsburgh, Pa., for Local Union No. 12.

Ben Paul Jubilerer, Pittsburgh, Pa., for Local 485 of Bakery Drivers.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendants.

GOURLEY, Chief Judge.

This is a most involved and intricate labor proceeding that points up the hardships and conflicts faced when the forces of automation, which have rendered the business operation of defendant, Liberty Baking Company, unprofitable in its present state, join with advantages offered by the tax laws to those acquiring sinking business operations to finally submerge a company with life still to be lived

This action was filed by the American Bakery and Confectionery Workers International Union, Local 12, against defendants to enjoin them (1) from removing and discontinuing their operations at the Liberty Baking Company plant at Pittsburgh; (2) from removing any equipment used in the production or distribution of baked goods at said plant in Pittsburgh; and (3) from further violating the contractual rights of plaintiff union and its members. Plaintiff alleges that defendants' proposed course of conduct will violate the Union Recognition, Union Security and Seniority Clauses of the Collective Bargaining Agreement.

The Court granted Bakery Drivers Local 485 the right to intervene as a

plaintiff. Intervening plaintiff requested the same relief as original plaintiff, and also requested the Court to order arbitration.

## FINDINGS OF FACT

The Court enters the following Findings of Fact:

1. Plaintiff, American Bakery and Confectionery Workers International Union, Local Union No. 12, AFL–CIO, ("Local No. 12"), is an unincorporated labor organization, having its principal office in Pittsburgh, Pennsylvania. It is the collective bargaining representative for the production and maintenance employees of the defendant, Liberty Baking Company of Pittsburgh, Pennsylvania.

2. Bakery Drivers, Local No. 485, ("Local No. 485"), which was permitted to intervene in this proceeding as a plaintiff, is an unincorporated labor organization, having its principal office in Pittsburgh, Pennsylvania. It is the collective bargaining representative for the wholesale and retail driver-salesmen employed by Liberty Baking Company of Pittsburgh, Pennsylvania.

3. Defendant, Liberty Baking Company, ("Liberty"), is engaged in the wholesale and retail production and distribution of bread, rolls, and sweet goods —cakes, pies and cookies—under the trade name and brand "Buttercup". Liberty maintains its plant and offices at 6006–18 Houston Street, Pittsburgh, Pennsylvania. It is engaged in interstate commerce within the meaning of the Labor Management Relations Act of 1947, as amended, 29 U.S.C.A. § 185.

4. Defendant, Noramco, Inc., ("Noramco"), is a Wisconsin corporation with its principal office in Queens Village, Long Island, New York. On or about May 14, 1965, Noramco acquired 85% of the outstanding stock of Liberty.

5. Defendant, Noramco, also owns a controlling interest in Goddard Baking Company, which is located in Chester, West Virginia; in Dugan Brothers Bakery, which is located in Queens Village, Long Island, New York; in Fastnachts Company, which is located in Allentown, Pennsylvania; and in Duquesne Baking Company of Pittsburgh, Pennsylvania, a defunct company which is now in liquidation.

6. On or about December 18, 1963, plaintiff Local No. 12, and defendant Liberty, entered into a Collective Bargaining Agreement covering Liberty's production and maintenance employees which will expire on August 13, 1965. This Collective Bargaining Agreement contains in Article 6 thereof a grievance arbitration procedure which provides as follows:

It is agreed that should any charge of discrimination or any grievance arise over a misunderstanding of the terms of this Agreement there shall be no strikes or stoppage of work or lockout. Any such controversy shall be settled in accordance with the following procedure:

(a) The aggrieved employee, the Union Steward and a Representative of the Company shall first make an honest effort to reach an amicable agreement or adjustment of the grievance. If a satisfactory solution is not reached, then

(b) The grievance shall be reduced to writing and signed by the aggrieved employee or the Steward.

(c) The Union Business Representative or the Steward will take the matter up with the Operating Superintendent. If no satisfactory agreement is reached within forty-eight (48) hours, then

(d) The Union Business Representative and the Shop Steward with or without the aggrieved employee will take the grievance up with the proper Company official. If no satisfactory agreement is reached, then

(e) The matter shall be submitted to an Arbitrator as provided herein, Request for Arbitration must be submitted in writing within five (5) days from the date of the last meeting between the Union and the Company.

(f) The Arbitrator shall be a person designated by mutual consent of the parties. In the event that the Company and the Union are unable to agree upon an Arbitrator within five (5) days after the matter has been referred to Arbitration, either party may apply to the Federal Mediation and Conciliation Service for a panel of seven (7) Arbitrators, and each party alternately shall strike three (3) names from the panel so obtained, and the name remaining shall be the Arbitrator designated to hear and determine the grievance.

The Arbitrator shall have no power to add to, detract from, or in any way alter the provisions of this Agreement.

The award of the Arbitrator shall be final and binding on both parties hereto. The cost of arbitration shall be shared equally by the Company and the Union.

7. The Collective Bargaining Agreement contains, in Article 1 thereof, a Union Recognition Clause which provides as follows:

Liberty Baking Company recognizes the Union as the exclusive representative of all its production and maintenance employees, covered by the classifications embodied in this agreement, for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment, and other conditions of employment, excluding craft maintenance, garage employees, car washers, office employees, sales drivers, truck drivers, engineers, guards, professional employees, and supervisors as defined in the act as amended.

(b) No Supervisor, Superintendent or Foreman will be a member of the Union.

(c) No Supervisor, Superintendent or Foreman will perform the normal work of any employee covered by this agreement except for the purpose of instructions or experimental work. The Union agrees that this provision shall not apply in cases of power failures, floods or unavoidable breakdowns.

8. The Collective Bargaining Agreement contains, in Article 2 thereof, a Union Security Clause which provides as follows:

(a) It shall be a condition of employment that all employees of the Employer covered by this agreement who are members of the Union in good standing on the execution date of this agreement shall remain members in good standing and those who are not members on the execution date of this agreement, shall on the 30th day following said execution date become and remain members in good standing in the Union.

(b) It shall also be a condition of employment that all employees covered by this agreement and hired on or after said execution date shall on the 30th day following the beginning of such employment become and remain members in good standing in the Union.

(c) The Employer agrees to furnish the Union with a list of the names of the employees hired and/or separated once each week, accompanied with the reason for his/her termination.

9. The Collective Bargaining Agreement contains a Seniority Clause in Article 10 thereof, which provides as follows:

1. Subject to the ability of the employee to do the available work, promotions, demotions, layoff, recall and vacancies shall be handled on a seniority basis. The senior employee shall be given a trial period of up to fifteen (15) days to prove his ability.

2. A job is to be considered open to bid only after an employee covered under this contract has definitely left the job through layoff, discharge or resignation, transfer to

another shift or department, or transfer to another job by bid or a new job is created.

3. Any job open to bid in accordance with paragraph 2 above shall be posted on the main bulletin board for a period of 72 hours. If no employee bids within the 72 hour period they shall be considered as having waived their right to bid for that job and then the Employer will recall the laid off employee in accordance with their seniority for the unfilled job.

(a) Jobs open for bid shall be first posted in the department.

(b) After all bids are exhausted within the department, then the unfilled job shall be posted on the main plant bulletin board for bidding on a plant wide seniority basis.

(c) Any successful bidder will carry with him his total plant seniority.

4. It is understood that in case of layoffs in excess of seven consecutive calendar days, employees subject to layoff, who after having been considered on a departmental basis are unable to qualify for continued employment in their own department, shall be given the opportunity for continued employment on a plant wide basis. Such employees may displace any employee in the plant with less seniority. It is further understood and agreed that layoffs or transfers continuing for more than seven consecutive calendar days shall subject such jobs to the bidding procedure, for reason that upon restoration such jobs shall be considered as vacancies.

5. If such layoff is for less than a week, because the Employer is unable to provide a full week's work for all employees in the department, then such employee affected, on the basis of plant seniority, shall have the right to replace the employee with the least seniority for the day or days necessary to give such employees forty (40) hours pay.

6. Females that are presently on male classified jobs to be there as long as they are employed by the Company, or until they bid off their jobs. The females will be permitted to bid only on female classified jobs. Female jobs will be posted on a Master Board for females.

7. Females working on male jobs shall have the right to return to the female classification in accordance with seniority. However, male employees will have the right to continue in available work in accordance with their seniority. The male and female classifications will be listed as such.

8. It is further understood that an employee's seniority will not be affected by layoffs due to curtailed production, except as provided herein:

|  | Seniority continues for |
|---|---|
| Employees with less than thirty days of employment .... | No days |
| Thirty days to six months .......................... | 60 days |
| Six months to one year ............................. | 90 days |
| Over one year and less than two years ............... | 240 days |
| Over two years and less than three ................. | One year |
| Over three years ................................... | Two years |

9. The Employer will notify such laid off employees by telegram when to return to work. The employee must contact his Supervisor within

seventy-two (72) hours after receipt of telegram. Failing to do so the employee forfeits the right to recall provided by this Agreement. Copy of such notice to be given to the Union.

10. In the event the Company rehires two (2) or more former employees on the same day, who by a previous layoff have lost their seniority, the employee who had more seniority from his previous service shall then have the preference for seniority purposes.

11. Employees who serve the Union as full time Officers shall not accrue seniority while they serve as an Officer of the Union. The seniority of such an employee who returns to work shall be that which he or she acquired prior to becoming an Officer of the Union.

12. The Employer will furnish the Union with an up to date seniority roster at the beginning of each year.

10. On or about February 12, 1964, plaintiff Local No. 485 and defendant Liberty entered into a Collective Bargaining Agreement covering Liberty's wholesale driver-salesmen which will expire on July 1, 1965.

11. On or about September 1, 1962, plaintiff Local No. 485 and defendant Liberty entered into a Collective Bargaining Agreement covering Liberty's retail driver-salesmen which will expire on September 1, 1965.

12. At the time of the filing of the instant Complaint, Liberty employed approximately 125 production and maintenance employees represented by plaintiff Local No. 12 and 175 wholesale and retail driver-salesmen represented by plaintiff Local No. 485. Liberty also employed eight mechanics represented for purposes of collective bargaining by Automotive Mechanics Lodge 1060 of the International Association of Machinists and 15 operating engineers, who are represented by Local 95 of the Operating Engineers. Automotive Mechanics Lodge 1060 and Local 95 have not intervened and are not parties to this proceeding.

13. In six of the last seven years prior to 1965, defendant Liberty Baking Company lost money. During the year 1964, Liberty had an operating loss in excess of $95,000.

14. At a meeting held on the morning of June 2, 1965, representatives of Liberty and Noramco reviewed Liberty's financial situation with the representatives of Local 12, and advised the Union representative that the only way the Company believed that it could continue to operate was to shut down its production facilities, have bread and rolls baked for it by Goddard Baking Company in Chester, West Virginia, purchase sweet goods from independent bakeries, reduce the number of wholesale and retail routes, and distribute its products, which would still bear the trademark "Buttercup", through distribution depots where approximately 12 members of Local 12 would be employed as shippers. Local 12 was also advised that approximately 14 of its members would be given preference for employment at the Goddard Baking Company plant, but that since Goddard had a collective bargaining agreement with another union, they would have to go to the bottom of the seniority list. Representatives of Local 12 were advised that the only other way Liberty could remain in business would be for the employees to take a pay cut of 95 cents per hour. Neither of these proposals was acceptable to Local 12 and although the Union stated it was willing to give consideration to the Company's problem, it made no proposal of its own.

15. On the evening of June 2, 1965, the representatives of Liberty and Noramco met with the other three Unions which represent the Liberty employees, Local 485, Lodge 1060, and Local 95. Officials of Local 12 met with the Company representatives in the morning of June 2, 1965, because of prior commitments and therefore, Local 12 was not represented at the evening meeting. Liberty's financial condition was explained to the three Unions and they were

advised that Liberty could only remain in business if all of the Unions accepted the plan which had been explained to Local 12 earlier in the day. The Unions were advised that unless all four Unions accepted the plan, it would be necessary for Liberty to discontinue operations completely. None of the Unions accepted the Company's proposal.

16. On June 3, 1965, Liberty notified its employees of its intention to permanently shut down all operations. Under the terms of the announcement, the last day for production was to be June 11, 1965, and for sales, June 12, 1965.

17. On the same date, Liberty sent a letter to Local 485, with copies to all other Unions, extending its consolidation proposal of June 2, 1965, to 12:00 noon June 9, 1965, with the understanding that unless the proposal was accepted by all Unions by that time, the shutdown notice of June 3, 1965, would become effective.

18. On June 4, 1965, plaintiff Local 12 filed the instant Complaint seeking an order restraining and enjoining the defendants from removing and discontinuing operation of the Liberty plant, from removing any equipment, machinery, tools or material used in the production or distribution of baked goods produced at the Liberty plant, and from further violation of the contractual rights of Local 12 and its affected members.

19. No grievance has been filed by Local 12 or any of its members with respect to the dispute which is the subject matter of this Complaint.

20. No grievance has been filed by Local 485 or any of its members with respect to the dispute which is the subject matter of this Complaint.

21. The offer set forth in Liberty's letter of June 3, 1965, was not accepted by any of the four Unions and therefore has terminated.

22. Liberty intends to permanently discontinue all of its operations in accordance with its shutdown notice of June 3, 1965. Liberty intends to sell its wholesale routes and, if possible, its retail routes, to other bakeries not in any way affiliated with Liberty or Noramco, and to sell its plant and equipment.

23. Defendants do not intend to engage in the production of any item now produced at the Liberty Baking Company at any other source or any other channel in which defendants have any interest or contract, either directly or indirectly, for distribution and sale in the area now serviced by Liberty Baking Company.

24. Defendants do not intend to buy nor to have anyone buy on their behalf any item now produced at the Liberty Baking Company for distribution and sale in the area now serviced by Liberty Baking Company.

25. Goddard Baking Company, which produces bread and rolls at its Chester, West Virginia, plant and markets its products under the trade name "Betsy Ross" in West Virginia, Ohio, and in certain portions of Beaver, Allegheny, Washington and Fayette Counties, does not intend to assume any of Liberty's former business.

26. There is no evidence whatever of a runaway shop or other anti-union animus or activities on the part of either defendant in connection with the decision to permanently shut down the Liberty plant and all operations connected therewith.

27. Any other claims of Local 12, actual or potential, have not been reduced to judgment.

## CONCLUSIONS OF LAW

The Court enters the following Conclusions of Law:

1. The Court has jurisdiction of the parties and the subject matter under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185.

2. Arbitration is a matter of contract and a party cannot be required to submit to arbitrate any dispute which he has not agreed to submit. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

3. It is the duty of the Court to determine whether the parties have agreed by contract to arbitrate the dispute in question. Atkinson v. Sinclair Refining Co., supra.

4. The contract between plaintiff Local 12 and defendant Liberty cannot be construed to bind the Union to arbitrate its claims for the alleged breach of the Collective Bargaining Agreement. Arbitration under said contract is a last step to be invoked only if an employee's grievance has not been adjusted by the processes of the grievance procedure. The grievance procedure specifically outlines steps to be taken which, if unsuccessful, will lead to arbitration. However, the grievances referred to are only those of an aggrieved employee and not those of the Union.

5. The Court will not decide the question whether Bakery Drivers Local 485 is free to bring suit under the terms of its Collective Bargaining Agreement with Liberty, or whether it is required to resort to arbitration, since the Union and Company agree that the arbitration clauses apply. In light of the agreement between Local 485 and Liberty, no issues are left before the Court with respect to the claims of the intervening plaintiff as it has an adequate remedy under its Collective Bargaining Agreements with Liberty Baking Company.

6. A Collective Bargaining Agreement does not create an employer-employee relationship nor does it guarantee the continuation of such a relationship. Fraser v. Magic Chef-Food Giant Markets, Inc., 324 F.2d 853 (C.A.6, 1963).

7. The Union Security, Union Recognition, and Seniority Clauses of the Collective Bargaining Agreement contain no provision which could be interpreted as a limitation on the right of defendants to completely discontinue operations.

8. The Expiration Clause of the Collective Bargaining Agreement does not limit the right of defendants to completely discontinue operations. Its only significance is that so long as an employer-employee relationship exists, the rights and obligations of the parties are governed by the Collective Bargaining Agreement until its expiration. Fraser v. Magic Chef-Food Giant Markets, Inc., supra.

9. It is specifically understood that the conclusion reached that the matters presented are not subject to arbitration relates solely to the rights of Local 12 and not to the rights of the individual members of said Union to pursue the grievance arbitration procedure as set forth under the Collective Bargaining Agreement for whatever rights that have accrued or may accrue under said Agreement.

10. It is specifically understood that the conclusions reached herein do not relate to any rights Local 12 may have for monies owing to any pension or welfare fund of Local 12 or the American Bakery and Confectionery Workers International Union.

11. The motion of the American Bakery and Confectionery Workers International Union, Local Union No. 12, for Preliminary Injunction is denied because no irreparable harm or injury for which the Court can grant relief has been found.

12. The dissolution of a business corporation by the sale of its assets does not impair the remedy of any creditor for any liability incurred prior to such dissolution if suit is filed and service of process effectuated within two years after the date of such dissolution. 15 P.S. § 2852–1111, subd. A.

13. There is no basis in law or equity to restrain defendants from disposing of their assets.

14. There is no basis for the issuance of the Writ of Ne Exeat in this proceeding. Elkay Steel Co. v. Collins, 392 Pa. 441, 141 A.2d 212 (1958).

An appropriate Order is entered.