HOTEL AND RESTAURANT EMPLOYEES' ALLIANCE, LOCAL NO. 237, OF the HOTEL AND RESTAURANT EMPLOYEES' INTERNATIONAL UNION AND BARTENDERS' INTERNATIONAL LEAGUE OF AMERICA, AFL–CIO, et al., Plaintiffs,

v.

ALLEGHENY HOTEL CO., d/b/a Pick Roosevelt Hotel and Pick Hotels Corporation, Defendants.

Joseph MARSHALL et al., Plaintiffs,

v.

ALLEGHENY HOTEL CO., d/b/a Pick Roosevelt Hotel and Pick Hotels Corporation, Defendants.

Civ. A. Nos. 72–728, 72–822.

United States District Court,
W. D. Pennsylvania.

April 26, 1974.

Lipsitz & Nassau, Pittsburgh, Pa., for plaintiff in Civ.A. No. 72–728.

James F. McKenna, Jr., Pittsburgh, Pa., for plaintiff in Civ.A. No. 72–822.

Milton W. Lamproplos and William Alvah Stewart, III, Pittsburgh, Pa., Howard L. Kastel, of Altheimer & Gray, Chicago, Ill., for defendant Hotel.

## OPINION

WEBER, District Judge.

These two consolidated actions present common questions of fact and law arising out of a Collective Bargaining Agreement. Jurisdiction is founded on 29 U.S.C. 185.

In Civil Action No. 72–728 the plaintiffs are labor unions and trustees of their insurance, pension and welfare funds (hereinafter plaintiff Unions) which bring an action against the defendant hotel corporations (hereinafter defendant Hotel) based on a claim that the termination of operations during the effective period of the Collective Bargaining Agreement represents a breach of that agreement with respect to the right of the employees to be continuously employed during the life of the agreement. To this complaint the defendant Hotel has filed an Answer and a Counter-Claim which asks the court to construe the legal obligations of the parties under the agreement in a declaratory judgment.

The defendant Hotel has moved for Summary Judgment and both parties have submitted evidentiary materials and briefs to the court on this issue.

In a parallel action at Civil Action No. 72–822 certain individual employees (hereinafter plaintiff employees) have filed as representative parties plaintiffs a class action against the defendant Hotel on the ground of breach of contract and also on the ground that the defendant Hotel's alleged failure to disclose its poor financial condition to the plaintiff Employees constituted fraud in inducing the plaintiff employees' consent to the Collective Bargaining Agreement. Defendant Hotel's response to this complaint was a *Motion to Dismiss* pursuant to Fed.R.Civ.P. 12(b) on the ground that the plaintiff employees' complaint fails to state a claim upon which relief can be granted. The court allowed the consideration of evidence extrinsic to the record and treated this as a motion for summary judgment under Fed.R. Civ.P. 56.

Both motions have been briefed and argued together. They will be individually considered herein.

## I.

## THE GUARANTEE OF CONTINUOUS EMPLOYMENT ISSUE.

■ In Civil Action No. 72–728 the plaintiff Unions originally contended that the Collective Bargaining Agreement constituted a guarantee of employment during the term of the agreement. There is no specific language in the contract which could be construed as such a guarantee and after earlier stages of proceedings in this case that line of argument was not pressed in view of the well-established doctrine that a collective bargaining agreement is not a guarantee of employment during its term, but is solely an agreement as to the terms and conditions under which such employment relationship will be conducted. See J. I. Case Co. v. Labor Board, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 [1944]; Fraser v. Magic-Chef Food Giant Markets, Inc., 324 F.2d 853 [6th Cir. 1963]; American Bakery & Con. Wkrs. Int. Un-

ion v. Liberty Baking Co., 242 F.Supp. 238 [W.D.Pa.1965]; and Bakery & Confectionery Wkrs. et al. v. Great Atlantic & Pacific Tea Co. Inc., 357 F.Supp. 1322 [W.D.Pa.1973], affd. by Judgment Order, 491 F.2d 748 [3rd Cir. 1974].

After the filing of defendant Hotel's Motion for Summary Judgment in the above case the plaintiff Unions were granted leave to amend their Complaint to allege the existence of an established "past practice" existing in the hotel industry in Pittsburgh, Pennsylvania, which required Pittsburgh hotel owners to remain open and continuously engage in business for the entire term of a collective bargaining agreement. The basis of plaintiff Unions' Amendment was the claim that the alleged "past practices" were incorporated into the Collective Bargaining Agreement as follows:

## "ARTICLE 6

### PRIVILEGES

This Agreement shall not be used to reduce wages where the wages paid to an employee before this Agreement was executed are higher than the wages set out in the attached schedule of minimum wages; nor shall this Agreement serve to deprive employees of any privileges enjoyed before this Agreement was executed nor shall the employees be deprived of any privileges established as a result of past practices prevailing in the hotel industry of Pittsburgh, Pennsylvania wherein such hotels are under Union contract."

In support of its amended claim the plaintiff Unions have filed a number of affidavits purporting to show a practice in the hotel industry in Pittsburgh.

With respect to the consideration of affidavits in support of or in opposition of a motion for summary judgment we must consider the restrictions of Fed.R. Civ.P. 56.

**1262**

"Rule 56.
Summary Judgment.

(e) *Form of Affidavits; Further Testimony; Defense Required.*

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein   .   .   .".

The affidavits filed by the plaintiff Unions are not sufficient under Fed.R. Civ.P. 56(e) to create a genuine issue of material fact as to a "past practice" in he hotel industry in Pittsburgh obliging employers to continue operations during the entire term of a collective bargaining agreement.

The affidavits submitted by plaintiff Unions in opposition to the motion for summary judgment fall into certain groups. The largest group consists of the affidavits of Walters, Johnston, Baldwin, Rossa and Mitchell, Union members who were part of the team that negotiated on behalf of the Union for the Collective Bargaining Agreement concluded between the parties for the period October 1, 1970 to September 30, 1973. The language of all of these affidavits is substantially the same. They recite that "the company clearly understood", "it was mutually understood", or "it was the understanding of all parties". They generally recite "To the best of my knowledge all hotel and restaurant employers in the Pittsburgh area who signed contracts with Local 237 undertook the obligation to remain in business until the expiration of the expressed time period covered by the terms of the Agreement   .   .   .".

The affidavits of Kern, Lipsitz, Benyon, Tantangelo and Prince form another group. These recite circumstances surrounding the closing down or sale of hotels or restaurants in Pittsburgh during the pendency or at the termination of similar collective bargaining agreements with plaintiff Unions.

The Kern affidavit states that the Sherwyn Hotel closed at the expiration of its collective bargaining agreement in 1967. The remainder of the affidavit is a conclusion of the affiant that it did so in recognition of a practice to remain in business until the contract expired.

The Benyon affidavit recites at length the closing of the Penn-Sheraton Hotel before the expiration of its contract, the work stoppage by the Union to force reopening, the sale of the hotel to other operators and its re-opening as the William Penn Hotel. This affidavit also recites Sections 2 and 3 of Article 31 of the Collective Bargaining Agreement there and then in effect which provide that the contract shall be binding on an "assignor, buyer or transferee" in the event of "a sale, transfer or assignment of the *business*." (emphasis supplied). The same language is contained in the contract in the instant case, but there is no contention that it is applicable because there has been no allegation of a sale, transfer or assignment of the business.

The two Lipsitz affidavits concern the closing of the Pittsburgher Hotel and state that the hotel closed one week before the expiration of its contract and that it paid wages to the end of the contract period after suit was filed to recover such monies. The supplemental affidavit of Attorney Lipsitz states that the employer's obligation to remain in business and the motives of the employer recited in the affidavit were conclusions which the affiant drew from the factual circumstances.

The Benyon and Lipsitz affidavits show instances where the Union adopted a course of conduct through labor difficulties or litigation to compel an employer to accede to its demands.

The Tantangelo and Prince affidavits state that the Downtown Club closed business on the date of expiration of their contract with the Union. Again the affidavits recite that it was the "understanding" of the owners that it they signed a new contract they would be

obliged to remain in business during the term.

Another group is comprised by the Flagg and Baker affidavits which recite the "understanding" of the affiants that it has been the practice in the hotel and restaurant business that an employer who signs a collective bargaining agreement was obliged to continue in business during its term.

Finally in the Zax affidavit, the affiant, as Vice-President, Secretary and General Counsel for the Hilton Hotels Corporation, states:

"That it was my impression or understanding that the intent of the provisions of this contract, including the above Articles, was that both parties would be bound to the contract in accordance with its terms during the duration thereof; that should the Hotel be sold, and whether or not it thereafter continued to be operated as a Hotel, the rights and obligations of the Employer, Buyer and Employees would be provided for in accordance with the Agreement for the duration thereof. It was my understanding that all of the terms of the contract relating to such matters reflected the customs in similar labor contracts with hotels in Pittsburgh, Pennsylvania."

The defendant Hotel has moved to strike all of plaintiff Unions' affidavits as being insufficient under the provisions of Fed.R.Civ.P. 56(e). We do not consider such action necessary; either the affidavits are sufficient to establish a genuine issue of material fact, or they are not.

We believe that none of these affidavits are sufficient for this purpose. They state information and belief of the affiant, they contain opinions or impressions of the state of mind or intent of other persons, they are based on hearsay, and they express conclusions. None of such testimony would be admissible at trial and it cannot be considered on affidavit submitted under Fed.R.Civ. P. 56(e).

The defendant Hotel argues that the affidavits may not be considered to alter, vary or enlarge the provisions of the Collective Bargaining Agreement. The plaintiff Unions reply that they do not attempt to introduce these affidavits to alter or change the terms of the agreement. With this we are in agreement. [See our Opinion in Bakery & Confectionery Wkrs. et al. v. Great Atlantic & Pacific Tea Co. Inc., cit. supra, where evidence of bargaining history was excluded on the question of the employer's right to close its shop and terminate the employer-employee relationship during the term of the contract. There was no express provision in that contract preventing the employer from doing so, and the court rejected offers of parol evidence to enlarge the provisions of the contract].

Nevertheless, certain of the affidavits or parts of certain affidavits purporting to set forth the intention of the parties or the understanding of the parties at the time of negotiation have been presented. As evidence of the intention of the parties offered for the purpose of enlarging the terms of the contract in an area where the contract is silent, such evidence is rejected. If it is to be considered at all, it can only be considered with reference to the explanation of the contract language "nor shall the employees be deprived of any privileges established as a result of past practices prevailing in the hotel industry of Pittsburgh . . .".

Does the contract term "past practices" require parol evidence to explain its meaning?

We find that the "past practices" clause is a common provision in a collective bargaining agreement. The presence of this clause indicates a recognition by the parties that provisions for all contingencies that are likely to arise in a continuing employer-employee relationship would be impossible to include in a collective bargaining agreement. Thus:

"Gaps may be left to be filled in by reference to the practices of the par-

ticular industry and of the various shops covered by the agreement." U. S. W. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 580, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 [1960].

It is in great measure due to this situation that the developing federal law of labor relations has so heavily favored the use of a grievance and arbitration procedure and has compelled recourse to its use in all cases where the collective bargaining agreement so provides. However, "past practices" cannot substitute for the collective bargaining agreement itself.

"What is a past policy, practice, custom or usage relating to working conditions? In substance, by the application of common sense without any judicial subtlety or refinement, these words simply mean the traditional or historic way of doing things. 'Working conditions,' a term somewhat peculiar and prevalent in the labor-management area, means the panoply of the incidents of the employment relationship." Independent Oil Wkrs. U. Local 117 v. American Oil Co., 296 F. Supp. 650, 658 [D.Kan.1969].

There are literally hundreds of labor cases submitted to arbitration to determine the existence of "privileges" and/or "past practices" which have been reported in the Labor Arbitration Reports, a service in the labor law field published by the Bureau of National Affairs. Defendant Hotel has submitted a great file of these in its brief. Our examination of these cases shows that all "past practice" or "privilege" cases have dealt with the terms and conditions of employment during the period in which the employer-employee relationship continued. They involve such problems as rest periods, smoking at work, meals, bonuses, work assignments, schedules, discipline, and a variety of similar matters that can arise during the employer-employee relationship.

No reported arbitration case interpreting "past practices" and no reported case from the courts attempts to construe the term "past practices" as a guarantee of continued employment during the life of the contract where the contract is silent as to this matter.

■ Because a collective bargaining agreement has been held to be not a contract of employment, and hence no guarantee of continued employment, we fail to see how the "past practices" clause may be interpreted to supply such an interpretation. What plaintiff Unions seek to establish is an interpretation of the Collective Bargaining Agreement that enlarges its terms to include a contract of employment for a definite term. This is not the introduction of parol evidence to explain an ambiguity of a contract, but to insert an entirely new element in the contract, a guarantee of continued employment:

"A collective bargaining agreement, in ordinary usage and terminology, does not create an employer-employee relationship nor does it guarantee the continuance of one. Employees' rights under such a contract do not survive a discontinuance of business and a termination of operations." Fraser v. Magic Chef-Food Giant Mkts. Inc., 324 F.2d 853 [6th Cir. 1963].

"The Expiration Clause of the Collective Bargaining Agreement does not limit the right of defendants to completely discontinue operations. Its only significance is that so long as an employer-employee relationship exists, the rights and obligations of the parties are governed by the Collective Bargaining Agreement until its expiration." American Bakery & Con. Wkrs. Int. U. v. Liberty Baking Co., 242 F.Supp. 238 [W.D.Pa.1965].

And we have held that in the absence of a specific provision in the collective bargaining agreement stating that the employer could not close or terminate the employer-employee relationship at any time during the agreement, one could not be supplied by construction. Bakery & Con. Wkrs. v. The Great Atlantic & Pacific Tea Co., cit. supra.

When we read the instant Collective Bargaining Agreement as a whole, as we must to determine its meaning, we find any argument that its terms effect a guarantee of employment to be contrary to certain express provisions of the contract. The agreement reserves the right to the employer not to pay wages where work was not available as a result of causes beyond the control of the employer, to lay off employees as a result of slow business, to lay off waitresses and kitchen help if their stations are closed, to reduce operations by closing entire floors of the hotel, to make reductions in the front office help and the like. All of these rights of the employer are inconsistent with the plaintiff Unions' claim of guaranteed employment.

We, therefore, conclude that there is no genuine issue of material fact as to a breach of the Collective Bargaining Agreement because,

(1) the contract contains no guarantee of continued employment,

(2) the contract contains no prohibition against the employer's ceasing to do business during its term,

(3) parol evidence of the intention of the parties cannot be considered to enlarge the terms of the contract, and

(4) the parol evidence is insufficient in form and substance to establish a material issue of fact that the "past practice" clause of the contract can be enlarged to include an entirely new right of guaranteed employment outside the provisions of the contract.

## II.

### THE FRAUDULENT REPRESENTATION ISSUE

#### (Civil Action No. 72–822)

In the separate action of certain individual employees, in addition to raising the breach of contract issue which is common with that raised in Civil Action No. 72–728, plaintiff employees also assert the claim that the failure of the defendant Hotel to disclose certain facts which it knew or should have known regarding the defendant Hotel's financial condition at the time of negotiation of the Collective Bargaining Agreement constituted a fraud on plaintiff employees and members of their class in inducing their approval of the agreement.

Defendant Hotel has responded to this by a Motion to Dismiss under Fed.R. Civ.P. 12(b) for failure to state a claim upon which relief can be granted. Plaintiff employees have filed in response to the Motion to Dismiss an affidavit containing the opinion of an accountant derived from a study of defendant Hotel's financial statements. The affidavit and opinion cover the years 1967 through 1971 and indicate that the defendant Hotel showed a rising profit for the years 1967 and 1968, and a loss in 1969 and thereafter, coupled with a declining occupancy rate.

The essence of plaintiff employees' fraud claim is that defendant Hotel knew or should have known at the time of the contract negotiations that it was in financial difficulty which might affect its ability to continue in business during the life of the contract; that defendant Hotel had a duty to disclose this to plaintiff employees before they approved the contract; that defendant Hotel did not disclose this and as a result the plaintiff employees were damaged.

The essential elements of a civil action for fraud and deceit are:

(1) A representation was made as to a fact;

(2) The representation was known to be untrue by the party making it;

(3) The representation was intentionally or recklessly made;

(4) The representation was made with intent to deceive and for the purpose of inducing the other party to rely on it;

(5) The other party did rely on the representation to his damage.

The plaintiff employees' complaint does not allege these elements. There is no allegation of a statement made by defendant Hotel as a representation of fact. Ergo, there was no untrue representation, and there was nothing upon which plaintiff employees were induced to rely.

Plaintiff employees argue that defendant Hotel was under a duty to disclose its financial circumstances and the omission to disclose constitutes a material misrepresentation.

 There is no duty to disclose between parties to an arm's length transaction, where no confidential relationship exists. This is the situation in collective bargaining negotiations. Local Union No. 600, etc. v. Ford Motor Co., 113 F.Supp. 834 [E.D.Mich.1953].

The situation is different under 29 U.S.C. 158(a)(1, 5) which requires that on request of the union an employer must furnish relevant financial status information which the union needs in the bargaining negotiations. See United Furniture Workers of America v. N.L. R.B., 388 F.2d 880 [4th Cir. 1967], for limitations on this right. The statutory remedy for failure to disclose on request is pursued by the filing of an unfair labor practice complaint before the National Labor Relations Board within six months of the date of such action.

In brief, the plaintiff employees' complaint in Civil Action No. 72-822 fails to set forth the elements of a cause of action in fraud and deceit and, furthermore, shows that those elements cannot be pleaded. The affidavit filed by plaintiff employees as to the deteriorating financial condition of defendant Hotel is immaterial, since there was no obligation to disclose these facts. Furthermore, the affidavit contains an analysis of operations beyond the date of the contract negotiations and, therefore, reveals only one year before the contract in which an operating loss was incurred. The closing of the defendant Hotel only occurred after two further years of declining operations.

We therefore find that plaintiff employees in Civil Action No. 72-822 have failed to state a cause of action in fraud and deceit and the complaint must be dismissed.