UNIÓN de TRABAJADORES de la IN-DUSTRIA GASTRÓNOMICA de PUER-TO RICO OF the MOTEL AND RES-TAURANT EMPLOYEES AND BAR-TENDERS INTERNATIONAL UNION, AFL–CIO, Plaintiff,

v.

HELIO SAN JERÓNIMO CORPORA-TION d/b/a Helio Isla Hotel, Defendant.

Civ. No. 75–1444.

United States District Court, D. Puerto Rico.

July 28, 1977.

Francisco Aponte Pérez, Santurce, P. R., for plaintiff.

O'Neill & Borges, Irwin H. Flashman, Hato Rey, P. R., for defendant.

## OPINION AND ORDER

TORRUELLA, District Judge.

Plaintiff has brought this action on behalf of its members for the alleged breach of a Collective Bargaining Agreement by Defendant employer. Jurisdiction is invoked under the provisions of Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

The Complaint alleges the existence of a collective bargaining agreement between the Metropolitan Hotel Association of Puerto Rico, for and on behalf of the Defendant and other hotels, and the Plaintiff. Article VII thereof is alleged to provide that 75% of the regular employees in each classification by department shall have a minimum annual work guarantee of 2,080 hours. It is Plaintiff's contention that, by closing the hotel and ceasing its operations on April 28, 1975, the Defendant failed to honor the guarantee provisions of the agreement. Plaintiff requests that Defendant be ordered "to comply with the annual work guarantee provisions of the Agreement" as well as "such other further and equitable relief as the Plaintiff may be entitled to in this action."

Several Motions are now pending before the Court. On February 24, 1977 Defendant filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. An opposition to said Motion was filed by Plaintiff on March 3, 1977. Thereafter, on April 6, 1977 Plaintiff filed a Memorandum in opposition to Motion to Dismiss and in support of Motion for Summary Judgment. Defendant retorted with a Motion for Summary Judgment which was filed on May 6, 1977.

The basic issue before the Court is whether the guarantee clause of the Collective Bargaining Agreement extends beyond the closing of the Defendant's hotel. The Defendant contends that the Collective Bargaining Agreement is not a contract of employment and that it cannot provide a guarantee of an annual opportunity for work beyond the termination of the employer-employee relationship. In turn, Plaintiff argues that, under the circumstances of this case, the guarantee provisions of the contract survive the closing of the Hotel and provide a basis for claiming compensation for the lack of opportunity to work during the remaining term of the contract.

Plaintiff also claims that the employer had a clear duty to arbitrate the grievance stated in the Complaint. The case of *Nolde Brothers Inc. v. Local 358, Bakery and Confectionery Workers Union AFL–CIO*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), is cited as supportive of this proposition. However, the issue of arbitrability is not before us. In *Nolde,* the Supreme Court stated:

" . . . in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." Id., at 253, 97 S.Ct. at 1073.

In the instant case it is clear that the parties unequivocally expressed their preference for a judicial rather than arbitral interpretation of their respective obligations. On October 8, 1975 the parties signed a mutual Release Agreement, which reads, as is herein pertinent:

"3. H.S.J. will make an offer of settlement through the Union to former employees in the amount of twenty four thousand dollars ($24,000). If that offer is rejected, then and only then, will the Union have the right to litigate solely its claim of H.S.J.'s alleged breach of the Guarantee provisions of the Labor Agreement. H.S.J. and the Union mutually agree that such litigation will be initiated by a Section 301 action filed by the Union before the Federal District Court in Puerto Rico."

The aforesaid agreement fulfills the requirements of Article XI, Section 3, which governs the modifications of the Collective Bargaining Contract.[1] Thus, when the Un-

---

1. Plaintiff itself has acknowledged that the parties were not required to exhaust the remedies provided in the grievance procedure prior to the commencement of the instant suit. *Plain-*

ion rejected the employer's offer, the question of arbitrability became a moot issue by virtue of the valid agreement embodied in the Mutual Release. Moreover, we think that the terms of said agreement clearly comply with the test set forth by the Supreme Court that:

" . . . where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." *Nolde Brothers Inc.*, supra, at 255, 97 S.Ct. at 1074.

We will now proceed to determine whether the yearly guarantee clause contained in the collective bargaining agreement is enforceable notwithstanding the closing of the hotel by Defendant thirteen months before May 24, 1976, expiration date of the agreement.

Article VII, the key clause of the agreement in this controversy, provides in its pertinent part:

"Section 3. Seventy-five percent (75%) of the regular employees in each classification by department, of each member hotel, excluding, however, all seasonal and temporary employees, casual employees, and banquet employees, shall be guaranteed *an opportunity for employment* for a minimum of two thousand and eighty (2,080) hours including the hours of their respective vacation periods, sick leave, paid holidays and disciplinary lay-offs, except that waiters who are regularly scheduled to work one (1) meal only in the public rooms named in Section 5(c) hereof, shall be guaranteed an opportunity *for employment for a minimum of one* thousand eight hundred and twenty (1,820) hours, including the hours of their respective vacation periods, sick leave, paid holidays and disciplinary lay-offs, during each twelve (12) months period of this Agreement, *provided that the employee is available to work.* This group

shall be hereinafter referred to as the 'guaranteed group.' (Emphasis supplied).

"Section 7. For the purposes of this Article it will be considered that an employee is not available to work only when he does not report to work in person, or when he refuses to work, *or if for any reason he cannot work.* (Emphasis supplied).

"Section 8. Section 3 of this Article shall be inoperative only in the event of a strike at a member hotel, or *in the event of a circumstance beyond the control of a member hotel as a result of which a member hotel cannot operate in a normal manner.* (Emphasis supplied).

"Section 9. Should occupancy of a member hotel drop to sixty percent (60%) or less for a period of thirty (30) consecutive days, then for that contract year only the annual guaranteed group set forth in Section 3 hereof shall be reduced from seventy five percent (75%) to sixty-six and two thirds percent (66⅔%). Thereafter for each successive consecutive thirty (30) day period in which a member hotel operates at sixty percent (60%) or less of occupancy the guaranteed group shall be reduced in the same proportion."

In turn, Article XVI of the Collective Bargaining Agreement reads as follows:
## "MANAGEMENT RIGHTS
All matters relating to the operation, control and direction of the business of each member hotel, including the selection of personnel, control and direction of the work forces and the establishment and enforcement of reasonable rules and regulations are reserved to each member hotel, except as expressly provided in this Agreement."

In determining the scope of the above quoted contractual provisions, the following undisputed facts should be considered:[2]

tiff's *Memorandum in Opposition to Motion* to Dismiss, at p. 1.

**2.** These facts are attested to in an affidavit of Mr. Pasquale M. Volonino, submitted in sup-

port of Defendant's Motion for Summary Judgment. No countervailing evidentiary materials have been proffered by Plaintiff. Hence, we

In the year of 1973 the Helio Isla Hotel, which had begun operations in February of that year lost $2,552,102. In 1974 the Hotel lost $5,815,704 and in the first four months of 1975, the losses amounted to $983,067. On March 18, 1975 the Union and the employees were made aware of the very poor financial condition of the Hotel. They were also informed that if the Hotel were to continue to operate, the situation had to be drastically improved.

During the tourism season of 1974–1975 the occupancy rates of the Hotel were substantially below the rates for the season of 1973–74. All of this led to a meeting between representatives of the Hotel and the Union to discuss the financial situation of the Hotel and to make certain requests to the Union. The Union was requested to allow greater flexibility in the use of personnel and to allow a reduction in the total number of Local 610 employees. The Union did not accede to these requests, stating that any action by the Hotel would be fought out in arbitration, and if necessary, in the Courts.

In April, 1975 the Tourism Development Company indicated to the Hotel that it could not guarantee the refinancing of the 8.5 million dollars in mortgage debt which was held by the Hotel. It further indicated that it could not loan to the Hotel the 1.2 million dollars which had been requested to cover anticipated operating losses.

On the basis of these responses, the Hotel representatives informed the Union representatives that the denial of the Hotel's requests by the Tourism Development Company and the Union placed the Hotel in a position where no jobs for anyone could be guaranteed. Thereafter, on April 26, 1975 a decision was taken to close the Hotel permanently. Two days later, the Hotel permanently ceased all operations.

The uncontroverted affidavit submitted by Defendant further states that the basic reasons for the discontinuance of operations were: The economic recession which was felt both in the United States and Puerto Rico during the years 1974 and 1975; the consequent decline in tourist revenues; the increases in costs of materials, supplies and energy; the increases in labor costs; the inability of the Hotel to obtain refinancing of its debt due to the increase in the costs of financing; the refusal of the Union to allow greater flexibility in the use of union personnel and its refusal to allow a reduction in the work force.

Against the backdrop of the aforestated facts and of the pertinent contractual provisions, we shall now explore the legal framework within which the present matter should be analyzed.

 It is well established that an employer has the right to close his entire business and that such action, even though discriminatory, ends the employer-employee relationship. *Textile Workers v. Darlington Mfg. Co.*, 380 U.S. 263, 274, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965). This is so even when business is discontinued during the life of the collective bargaining agreement, since the rights of employees under the agreement presuppose an employer-employee relationship. *Fraser v. Magic Chef-Food Giant Markets, Inc.*, 324 F.2d 853 (C.A. 6, 1963). In the cited case the Court stated:

" . . . A collective bargaining agreement, in ordinary usage and terminology, does not create an employer-employee relationship nor does it guarantee the continuance of one. Employee's rights under such a contract do not survive a discontinuance of business and a termination of operations." *Id.*, at 856.[3]

---

are bound to accept the truth of these facts. *Morton v. Browne*, 438 F.2d 1205 (C.A. 1, 1971); *Doctors Hospital Inc. v. Recio*, 383 F.Supp. 409 (D.C.P.R.1974).

**3.** The rationale behind this doctrine is that a collective bargaining agreement is not a guarantee of employment during its term, but is solely an agreement as to the terms and condi-

tions under which such employment relationship will be conducted. *J. I. Case Co. v. N.L. R.B.*, 321 U.S. 332, 334–335, 64 S.Ct. 576, 88 L.Ed. 762 (1944); *American Bakery & Con. Wkrs. Int. Union v. Liberty Baking Co.*, 242 F.Supp. 238 (W.D.Pa., 1965); *Bakery & Confectionery Wkrs. et al v. Great Atlantic & Pacific Tea Co., Inc.*, 357 F.Supp. 1322 (W.D.Pa., 1973), aff'd 491 F.2d 748 (C.A. 3, 1974).

■ Beyond these general rules, courts have consistently examined the terms of the collective bargaining agreements to determine whether they provide for rights which would survive the total termination of business by the employer, where the agreement extends beyond the date of closure. In this context, it has been held that the general rule allowing an employer to discontinue its business at will may be over-ridden when there exists a specific provision in the contract limiting that inherent faculty of the employer. E. g., *Fraser v. Magic Chef-Food Giant Markets, Inc.,* supra; *Hotel & Rest. Emp. A., Loc. No. 237 v. Allegheny Hotel Co.,* 374 F.Supp. 1259 (W.D.Pa., 1974); *Bakery & Confectionery Wkrs. et al. v. Great Atlantic & Pacific Tea Co., Inc.,* supra; *American Bakery & Con. Wkrs. Int. Union v. Liberty Baking Co.,* supra.

■ Reading the collective bargaining agreement as a whole, as we must do to ascertain its scope, we learn that there is no intention that Article VII be construed as a guarantee of employment beyond the total closing of the Defendant hotel. The Management Rights clause of the collective bargaining agreement here in question contains no specific provision dealing with the employer's right to discontinue business. However, the fact that the Defendant was not given the express right to discontinue operations in this clause of the contract does not mean that the right did not exist. See, *Fraser v. Magic Chef-Food Giant Markets, Inc.,* supra, at 856. Neither does the Duration article of the contract limit that right, since the significance of said provision is that as long as an employer-employee relationship exists, the rights and obligations of the parties are governed by the contract. *Ibid.*

The collective bargaining agreement before us also contains in Section 7 of the Article entitled "Seniority", provisions governing lay offs and severance pay. There is nothing in the terms of the severance pay clause that would render it inapplicable upon cessation of operations during the life of the agreement. It thus seems that the severance pay provision constitutes the remedy contemplated by the parties in the event of a termination of operations, Cf. *American Bakery & Con. Wkrs. Int. U. v. Liberty Baking Co.,* supra; *Bakery Workers v. A. & P. Co.,* 357 F.Supp. 1322 (W.D.Pa., 1973), aff'd 491 F.2d 748 (C.A. 3, 1974).

We shall now examine the only clause in the contract that can arguably be construed to provide a basis for the monetary compensation claimed by Plaintiff. Section 3 of Article VII establishes a guaranteed *opportunity for employment,* as distinguished from the other provisions of the contract whereby a daily and weekly guarantee of *work or pay are* provided for. Said section regulates which employees are to be covered by the annual opportunity for employment. The guarantee is made subject to the availability of the employee to work. Thus, if a covered employee is not available to work, the guarantee will not be applicable to him.

Section 7 of Article VII defines what is meant by "not available to work" as "only when he does not report to work in person, or when he refuses to work, or *if for any reason he cannot work*" (emphasis supplied). We think that this language clearly renders the guarantee inapplicable after the termination of the hotel's operations, since the closure of the hotel undoubtedly falls within the phrase "for any reason."

It should be pointed out that Section 9 of Article VII reveals a clear intent to provide the guarantee to a reduced portion of the covered employees when the occupancy rate is sixty percent (60%) or less for thirty (30) consecutive days during a contract year. After that period, coverage is to be further reduced by another eight and one third percent (8⅓%) for each successive thirty consecutive day-period in which there is a sixty percent or less occupancy. Hence, if the occupancy rate continued to fall under sixty percent, the coverage of the guarantee would eventually be reduced to zero. Such being the case, we so no logic in the argument that when the hotel permanently closed and terminated all of its operations, thus checking out all guests, the alleged guarantee would still continue in effect.

Moreover, Article VII, Section 8 of the Agreement confirms that, under the circumstances of this case, the alleged guarantee cannot be held to be operative. This clause specifically makes the guarantee inoperative in the event of circumstances beyond the control of the hotel, "as a result of which it cannot operate in a normal manner."

It is clear that the closing of the Hotel prevents the operation in a normal manner. Nevertheless, Plaintiff claims that a voluntary closing is insufficient to meet the requirement of "circumstances beyond the control" of the hotel. We cannot agree with this contention.

The affidavit submitted in support of Defendant's Motion for Summary Judgment shows that the Hotel made many attempts to remain in business, which were rendered unfruitful by the prevailing economic conditions, by the Hotel's inability to obtain financial assistance and by the refusal of the Union to explore alternative measures of economic relief. These facts, which have not been controverted by Plaintiff, tend to demonstrate that the Hotel was forced to close by circumstances beyond its control, within the meaning of the quoted contractual provision.

In view of the foregoing legal and factual grounds, we are compelled to conclude that the annual guarantee clause of the contract involved herein was made inoperative by the severance of the employer-employee relationship through the Defendant's discontinuance of its business as well as by the language of the clause itself. Cf. *Hotel & Rest. Emp. A., Loc. No. 237 v. Allegheny Hotel Co.,* supra.

Wherefore, Defendant's Motion for Summary Judgment is granted and this case is hereby dismissed. The Clerk of the Court shall enter Judgment in accordance with this Opinion.

IT IS SO ORDERED.