**BAKERY AND CONFECTIONARY WORKERS INTERNATIONAL UNION OF AMERICA, LOCAL UNION NO. 12B, affiliated with Bakery and Confectionary Workers International Union of America, Plaintiff,**

v.

**The GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC., Defendant.**

Civ. A. No. 72–783.

United States District Court,
W. D. Pennsylvania.

May 11, 1973.

Frank P. G. Intrieri, Joseph J. Pass, Jr., Pittsburgh, Pa., for plaintiff.

Leonard L. Scheinholtz, Harley N. Trice, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

Plaintiff's Complaint, as amended, claims monetary damages for termination of employment of its members caused by the closing of defendant's bakery in Pittsburgh, Pennsylvania, during the term of a collective bargaining agreement between the parties.

The plaintiff originally sought an injunction to enjoin defendant from discontinuing its Pittsburgh bakery operation, which after notice and hearing, was denied. This amended Complaint followed.

The suit was brought in this Court under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. The Court has jurisdiction.

Defendant now moves for Summary Judgment on the whole record.

The plaintiff claims that the discontinuance of operations and the termination of employment of its members was in violation of the Collective Bargaining Agreement between the parties, executed May 3, 1970 effective from May 4, 1970 until May 5, 1973. The Pittsburgh bakery operation was terminated October 8, 1972 during the life of the Agreement.

The plaintiff alleges that the discontinuance violated a provision of Article V of the Agreement which provides:

"(a) Beginning February 28, 1965, all employees hired on or before December 31, 1962 are guaranteed that they will be scheduled to work five days (40) hours each week. . . ."

The plaintiff contends that this weekly guarantee language was intended to be a guarantee of employment until the expiration of the contract, and at the injunction hearing introduced testimony of the bargaining history to support that argument. We held that the only effect of the parol evidence produced, if it were to be considered at all, would be to compel the court to refuse the injunction because the right contended for by the plaintiff would not be clear and free from doubt.

We will consider the plaintiff's argument for admission of parol or extrinsic evidence later, but first we must consider the effect of the language in the contract.

It has been frequently decided that a collective bargaining agreement does not create an employer-employee relationship, nor does it guarantee continuation of such a relationship. Fraser v. Magic Chef-Food Giant Markets, Inc., 324 F.2d 853 (6th Cir. 1963); Hauser v. Farwell, Ozmun, Kirk & Co., 299 F.Supp. 387 (D. Minn.1969). It has been so held in this District in a similar case involving the closing down of a bakery plant during the term of a collective bargaining agreement. See American Bakery & Con. Wkrs. Int. U. v. Liberty Baking Co., 242 F.Supp. 238 (W.D.Pa.1965).

"A collective bargaining agreement, in ordinary usage and terminology, does not create an employer-employee relationship nor does it guarantee the continuance of one. Employees' rights under such a contract do not survive a discontinuance of business and ·a termination of operations. See Local Lodge 2040, I.A.M. v. Servel, Inc., 268 F.2d 692, C.A.7, cert. den., 361 U.S.

884, 80 S.Ct. 155, 4 L.Ed.2d 120; Oddie v. Ross Gear & Tool Co., 305 F.2d 143, C.A.6, cert. den., 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275; Elder v. New York Central R. Co., 152 F.2d 361, C.A. 6; United States Steel Corp. v. Nichols, 229 F.2d 396, 56 A.L.R.2d 980, C.A.6, cert. den., 351 U.S. 950, 76 S.Ct. 846, 100 L.Ed. 1474." Frazer v. Magic Chef, *supra*, 324 F.2d p. 856.

■ There is no provision in the instant contract that limits the right of the defendant to discontinue the operation of its Pittsburgh bakery. Neither the Union Recognition Clause, Article I; nor the Wage Clause, Article III, reciting "for the duration of the agreement", nor the General Clause, Article XII(d) recital of "for the duration of the agreement"; nor the Termination Clause, Article XVIII can be read as having any such effect.

"The Expiration Clause of the Collective Bargaining Agreement does not limit the right of defendants to completely discontinue operations. Its only significance is that so long as an employer-employee relationship exists, the rights and obligations of the parties are governed by the Collective Bargaining Agreement until its expiration. Fraser v. Magic Chef-Food Giant Markets, Inc., *supra*." American Bakery & Conf. Workers v. Liberty Baking Co., *supra*, 242 F.Supp. p. 245.

Reading the Agreement as a whole, as we must to determine its meaning, we learn that there is no intention that Article V(a) be construed as a guarantee of employment for the duration of the agreement because Article VI, Seniority, contains lay-off provisions in Section (c) thereof which provides that when it becomes necessary to lay off employees due to a reduction in the working force, employees shall be laid off on a plant seniority basis; other provisions governing reduction of the working force are also contained.

However, the Agreement also contains one clear-cut provision that demonstrates that the parties contemplated and provided for the possibility that the defendant might cease operations entirely in the Pittsburgh bakery during the term of the Agreement.

Article XVI. *Severance Pay*

"(a) The Company agrees that it will not build a new Bakery to produce the Pittsburgh production during the life of this Agreement.

Section I—It is agreed that each full-time employee who is displaced from his employment by reason of the closing of an entire plant, a department thereof or the introduction of labor saving equipment, shall be compensated for such displacement. . . . "

A formula for calculating the severance pay is then set forth.

We cannot accept plaintiff Union's argument that severance pay would be applicable only upon the closing of the bakery upon the expiration of the agreement, and does not apply upon cessation of operations during the term of the agreement. At the termination of the Agreement the company would not be under any contractual obligation to pay severance pay which it is obligated to pay under the Agreement during its life.

We therefore come to the construction of the Contract itself. We find it clear and unambiguous. Nowhere does its terms provide a guarantee of employment during the life of the contract, and further, the prospect of closing down operations was contemplated by the parties and provided for.

■ Where the rights and liabilities of the parties are dependent upon a contract in writing, those rights and liabilities must be determined from the language of the Contract without reference to extrinsic or "parol" evidence.

■ This is a substantive rule of law in Pennsylvania in the interpretation of contracts, and not a procedural rule governing the admissibility of evidence. The instant contract was executed in Pennsylvania between Pennsylvania par-

ties, and was to govern their working relationship in Pennsylvania.

With respect to the "parol evidence rule", the Court of Appeals for this Circuit has said:

"The testimony was in direct contradiction of the express terms and provisions of the contract. . . . . The fact that the appellant did not object to the admission of this evidence is of no significance. The question of admissibility aside, the franchise was an integrated contract and was not subject to parol alteration, modification or variance. This is the law of Indiana, which appears to be the place of contract, and also the law of Pennsylvania. (Indiana citations omitted.) Universal Film Exchanges, Inc. v. Viking Theatre Corporation, 400 Pa. 27, 161 A.2d 610, 616 (1960); International Milling Company v. Hachmeister, Inc., 380 Pa. 407, 110 A.2d 186, 189, 190 (1955); Gianni v. R. Russel & Co., 281 Pa. 320, 126 A. 791, 792 (1924). The rule, although designated the "parol evidence rule," is one of substance. O'Brien v. O'Brien, 362 Pa. 66, 66 A. 2d 309 (1949); Rest. Contracts, § 237, comment a; Williston on Contracts, 3d Ed., Vol. 4, § 631. It follows that under the law of either state the rights and liabilities of the parties must be determined under the written contract and without reference to prior or contemporaneous parol arrangements." Globe Motors, Inc. v. Studebaker-Packard Corporation, 328 F.2d 645, 649 (3rd Cir. 1964).

■ The parol evidence rule bars the admission of testimony as to bargaining history leading up to the execution of a collective bargaining agreement. Local 783, Allied Industrial Workers v. General Electric Co., 471 F.2d 751 (6th Cir. 1973).

Also in N. L. R. B. v. Gulf Atlantic Warehouse Co., 291 F.2d 475 (5th Cir. 1961) the Court said:

"We think that ordinarily the language of the contract as finally agreed upon must be construed by the courts in ac-

cordance with ordinary rules of construction without reference to the give and take of the bargaining sessions which produced the final terminology. Otherwise we would abandon completely the parol evidence rule when dealing with this type of contract" p. 477. See also Anson v. Hiram Walker & Sons, 222 F.2d 100, 103 (7th Cir. 1955), and Fraser v. Magic Chef, *supra*, 324 F.2d p. 857.

■■ The parol evidence rule allows the consideration of extrinsic evidence to resolve an ambiguity. Whether any particular word or phrase is ambiguous is a matter for determination by the court. Globe Motors, Inc. v. Studebaker-Packard Corporation, *supra*, and this is so regardless of whether the matter is tried before a jury, or submitted to the court in a motion for summary judgment.

"A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions; it is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends. 17 C.J.S. Contracts § 294 and cases there cited; Whiting Stoker Co. v. Chicago Stoker Corp., 7 Cir., 171 F.2d 248; Zehnder v. Michaud, 8 Cir., 145 F.2d 713." Lamar v. Granger, 99 F.Supp. 17, 35 (W.D.Pa.1951).

To find an ambiguity we must look at the written contract as a whole.

"Usually an ambgiuity is said to exist when from a consideration of the entire instrument the meaning of the controverted words is capable of more than one conclusion." United Packinghouse Workers v. Maurer-Neuer, Inc., 272 F.2d 647, 649 (10th Cir. 1959).

In this contract not only does the forty (40) hour weekly work guarantee provide no guarantee of continuous employment, but the lay-off provisions and the severance pay provisions explicitly negate any guarantee of continued employment for the duration of the Agreement.

It is this Court's determination that there is no ambiguity in this Agreement that permits the introduction of extrinsic evidence of bargaining history to vary its terms.

This Court never held any different construction of this Agreement. The quote in plaintiff's brief from the Court's remarks at the injunction hearing (Transcript, September 28, 1972, p. 76) is not the complete remark of the Court, which was as follows:

". . . and those arguments may go, just as your argument, to prove one thing here, that, contrary to my first impression, this language may be susceptible of interpretation as a guarantee of continued employment, but, to find it such, I have got to ignore the plain words of the contract; I have got to consider the bargaining history. . . ."

The Court was not expressing its conclusion; it was restating the argument presented by plaintiff's counsel to show how his very argument precluded the grant of a preliminary injunction.

Plaintiff further argues that the ambiguity is not "patent" here but "latent", and this permits the introduction of extrinsic evidence. While this argument would concede that there is no ambiguity apparent in the Agreement itself, it claims that extrinsic evidence would show this. Its brief states that "a latent ambiguity exists when the writing on its face appears unambiguous but there is some collateral matter which makes the meaning uncertain and parol evidence is admissable to explain that latent ambiguity."

We find this argument inapplicable. The best illustration of a latent ambiguity is the case cited by plaintiff, Koplin v. Franklin Fire Ins. Co., 158 Pa.Super. 301, 44 A.2d 877 (1945). In that case an insurance policy insured Chicken House No. 1 for $1,200 and Chicken House No. 2 for $300. Plaintiff claimed that Chicken House No. 1 was destroyed by fire, defendant denied this and averred that Chicken House No. 2 was dam-

aged. The Appeals Court held that the exclusion of extrinsic evidence as to the identity of the Chicken House was error. The Court stated "when the intention of the parties is clearly expressed, but a doubt exists not as to the intention, but as to the *object* to which the intention applies, a latent ambiguity arises." p. 303, 44 A.2d p. 878. The latent ambiguity exception to the parol evidence rule admits testimony not to vary the terms of a writing, but to determine the meaning of the words used. Leebov v. United States Fidelity & Guar. Co., 401 Pa. 477, 485, 165 A.2d 82 (1960). There is no question in the instant case of identity of the object or person, or the definition of a term of art used, as in In re Spectrum Arena, Inc., 340 F.Supp. 786 (E.D.Pa.1971), which required consideration of an extrinsic document in which the term was defined by the parties.

It may be noted that the arbitration clause in this Agreement did not compel arbitration of grievances, and provided only for their submission by mutual consent. The plaintiff did not consent to the defendant's request for arbitration.

A final matter here is the applicability of Summary Judgment under Fed.R.Civ. P. 56 to this matter. The defendant has moved for Summary Judgment as a matter of law on the pleadings and proceedings heretofore had. Plaintiff in its response offers the entire record, including the affidavit and testimony offered at the injunction hearing. It appears that this matter resolves itself on the question of whether any evidence of bargaining history or other factual matters can be admitted to vary the terms of the Agreement. Whether for the purpose of trial or the consideration of summary judgment we have held that it cannot, and therefore judgment must be rendered as a matter of law. It was so determined in Fraser v. Magic Chef-Food Giant Markets, Inc., *supra,* where the Court of Appeals affirmed the District Court's grant of summary judgment.

"Here the parties cancelled the old contract and entered into a new one

which expressly provided that it superseded the old one. The new contract, the subject of this litigation, is clear and unambiguous. It contains no provision which could be interpreted as a limitation on the right of the Company to discontinue business and to close its Cleveland plant. The contract cannot be enlarged by oral testimony." 324 F.2d 857.

Summary Judgment of dismissal of plaintiff's Complaint will be granted.