Charles L. FEATHER, t/a, Feather
Trucking, et al.

v.

UNITED MINE WORKERS OF AMERI-
CA, DISTRICT NO. 2, United Mine
Workers of America, and Local Union
No. 1600, United Mine Workers of
America.

Civ. A. No. 76–955 B.

United States District Court,
W. D. Pennsylvania.

May 7, 1979.

Jerald R. Cureton, Paul R. Hirschfield, Pittsburgh, Pa., for plaintiffs.

Melvin P. Stein, Lee A. Lazar, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

WILLIAM W. KNOX, District Judge.

This suit was filed by eleven Western Pennsylvania coal haulers[1] seeking damages on two grounds. First, plaintiffs contend, in Count I of their amended complaint, that defendants engaged in an illegal strike an object of which was to force plaintiffs to sign a collective bargaining agreement containing a hot cargo clause in violation of § 8(e) of the National Labor Relations Act (hereinafter "NLRA"), 29 U.S.C. § 158(e). Second, Counts II and III of plaintiffs' amended complaint allege that defendants conspired to restrain trade and create a coal hauling monopoly in violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, by engaging in the strike. On December 4, 1978, plaintiffs filed a motion

for summary judgment covering all three counts contained in their amended complaint. On February 5, 1979, defendants filed a motion for summary judgment on Counts II and III. After careful consideration of the issues, the court has determined that both of the motions must be denied.

We begin with the rule that summary judgment can be granted only where there is no issue as to any material fact. Further, all inferences and doubts must be resolved against the moving party. *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62 (3rd Cir. 1978). Summary judgment is rarely appropriate in an antitrust action. See *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573 (3rd Cir. 1979).

### (1) Count I

On December 6, 1974, following three months of negotiations and a month long strike, the National Bituminous Coal Wage Agreement of 1974 (hereinafter "NBCWA") became effective and UMWA members returned to work. UMWA member truck drivers who hauled coal, however, sought to negotiate a separate collective bargaining agreement which would address their particular problems. Although these coal haulers returned to work after ratification of the NBCWA, their return was contingent upon the continuation of discussions concerning modifications of the Agreement. When this arrangement was disrupted, the UMWA struck those coal hauling employers employing UMWA members who had not signed an agreement. At that time, there were approximately 14 members in the coal haulers association, but a number of those haulers were independent owner-operators who had no UMWA employees. Thus, the number of employers who were struck is small in comparison to the number of plaintiffs in this action. (See Affidavit of Arnold R. Miller). This strike gave rise to the instant action.

---

1. On September 13, 1977, this court determined that this case should proceed as a class action and defined the class to include all Western

Pennsylvania coal haulers who have hauled coal at any time from November 1, 1974.

The provisions of the NBCWA in dispute are contained in Article II(g)(1) and (2) of the Agreement. These clauses provide:

Article II: *Scope and Coverage.*

Section (g)—*Contracting and Subcontracting.*

(1) *Transportation of Coal*—The transportation of coal as defined in paragraph (a) may be contracted out only to a contractor employing members of the UMWA under this Agreement and only where contracting out such work is consistent with the prior practice and custom of the employer.

(2) *Repair and Maintenance Work*—Repair and maintenance work customarily performed by classified employees at the mine or central shop shall not be contracted out except (a) where the work is being performed by a manufacturer or supplier under warranty, or (b) where the employer does not have the available equipment or regular employees with necessary skills available to perform the work at the mine or central shop, provided, however, that the work at the mine or central shop shall be performed by UMWA members to the extent and in the manner permitted by law.

 Section 8(e) of the NLRA provides that it is an unfair labor practice

for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer . . . agrees to . . cease doing business with any other person . . . .

Section 8(b)(4)(B) of the Act provides that it is an unfair labor practice for a labor organization

to engage in . . . a strike . . . where . . . an object thereof is . . . (B) forcing or requiring any person to cease . . . doing business with any other person . . . .

A strike to force an employer to sign an agreement which contains a hot cargo clause in violation of § 8(e) is unlawful under § 8(b)(4)(B). *Carpenters Local No. 1976 v. N. L. R. B.,* 357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186 (1958).

Plaintiffs contend that the provisions contained in Article II(g)(1) and (2) are, on their face, illegal hot cargo clauses which violate § 8(e). Defendants, on the other hand, argue that the parties to the NBCWA intended these provisions to operate as lawful work preservation or union standards clauses and that, therefore, since this intent can be demonstrated only by the oral testimony of the negotiators, summary judgment is inappropriate. Plaintiffs, however, assert that any such testimony is inadmissible because it violates the parol evidence rule.

Although some cases (see *Local 783, Allied Industrial Wkrs. v. General Electric Co.,* 471 F.2d 751 (6th Cir. 1973) and *Bakery & Confectionary Wkrs. v. Great A. & P. Tea Co.,* 357 F.Supp. 1322 (W.D.Pa.1973)) have held that evidence of the surrounding circumstances, the bargaining history, and the intent of the parties at the time the collective bargaining agreement was executed is inadmissible to aid the court in interpreting a labor contract in a § 301 breach of contract case unless the contract is ambiguous, the Supreme Court in *National Woodwork Manufacturers Ass'n v. N. L. R. B.,* 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967), considered the legislative history of §§ 8(e) and 8(b)(4) and stated that a determination whether a particular clause and its enforcement violates these NLRA provisions "cannot be made without an inquiry into whether, under all the surrounding circumstances, the Union's objective was preservation of work . . . ., or whether the agreements and boycott were tactically calculated to satisfy union objectives elsewhere." 386 U.S. at 644, 87 S.Ct. at 1268. As "surrounding circumstances," the Court identified "the remoteness of the threat of displacement by the banned product or services, the history of labor relations between the union and the employers who would be boycotted, and the economic personality of the industry." *Id.* at 644 n.38, 87 S.Ct. at 1268 n.38. Our Circuit, in a case decided shortly after *National Woodwork,* cautioned that " . . . it is undesirable to determine the conscious objective of a union in obtain-

ing the inclusion of a challenged provision in a collective bargaining agreement on a bare stipulation of facts which supplies no indication of purpose or intention beyond the language of the provision and the general bargaining history." *A. Duie Pyle, Inc. v. N. L. R. B.,* 383 F.2d 772, 777 (3rd Cir. 1967).

Statements made during the discussions leading up to the execution of the collective bargaining agreement may directly bear upon whether the underlying purpose of the contested provisions of the agreement is the primary one of protecting work for members of the bargaining unit. *Sheet Metal Workers International Ass'n, Local 223 v. N. L. R. B.,* 162 U.S.App.D.C. 145, 155, 498 F.2d 687, 697 (1974). In *Local 223,* the Court vacated an order of the N.L.R.B. instructing the local union to cease and desist from maintaining a labor contract clause that the Board found violative of § 8(e) because the Board failed to adequately consider such statements and other evidence that is central to the evaluation of a labor agreement under § 8(e). In so holding, the Court relied upon *National Woodwork Manufacturers Ass'n v. N. L. R. B., supra,* and *Meat and Highway Drivers, Local 710 v. N. L. R. B.,* 118 U.S.App.D.C. 287, 335 F.2d 709 (1964), wherein the Court stated:

> To conclude that a contract term falling within the letter of § 8(e) properly falls within its prohibition there must be either a finding that both parties understood and acquiesced in a secondary object for the term, or a finding that secondary consequences within § 8(e)'s intendment would probably flow from the clause, in view of the economic history and circumstances of the industry, the locality, and the parties. [Footnotes omitted.] 162 U.S.App.D.C. at 151, 498 F.2d at 693.

Even if the parol evidence rule is applicable in the context of an alleged § 8(e) hot cargo clause, the rule does not bar the introduction of extrinsic evidence when mutual mistake is alleged. 4 Williston on Contracts § 631, p. 949 (3rd ed. 1961). In the instant case, although the Article II(g)(1) and (2) provisions appear on their face to be hot cargo clauses (see United Mine Workers of America (Amax Coal Co.), 238 N.L.R.B. No. 214 (1978)),[2] defendants, by contending that the intent of the parties was not that the provisions operate as § 8(e) clauses, may be alleging mutual mistake. (See Affidavit of Arnold R. Miller). On this additional ground, therefore, plaintiffs' motion with respect to the alleged § 8(e) clauses must be denied.

Since we are unable to determine on the present record whether the Article II(g)(1) and (2) provisions are illegal hot cargo clauses, we cannot decide the § 8(b)(4) issue. Therefore, plaintiffs' motion for summary judgment on Count I must be denied.

(2) Counts II and III

In moving for summary judgment on Counts II and III of the amended complaint, plaintiffs contend that it is unlawful for defendants to strike for the inclusion of a hot cargo agreement because such agreement restrains trade within the meaning of §§ 1 and 2 of the Sherman Act. Resolution of this motion in plaintiffs' favor presupposes a finding by the court that § 8(e) does not permit this type of agreement. This we decline to do for the reasons stated above. If plaintiffs subsequently prove their NLRA allegations, we would then determine whether the agreement is exempt from the federal antitrust laws. If the agreement is subject to the antitrust laws, we would then decide whether the agreement constitutes an agreement that restrains trade within the meaning of the Sherman Act. *Connell Co. v. Plumbers &*

---

2. In Amax Coal Co., the Board ordered that the union cease and desist from refusing to bargain collectively with Amax Coal Company by striking for the inclusion of clauses covering the subcontracting of the transportation of coal and of repair and maintenance work which are prohibited by § 8(e) in any collective bargaining agreement covering the employees in their bargaining unit. See 238 N.L.R.B. No. 214, p. 26. The language in the clauses at issue in *Amax Coal Co.* and in this action is identical.

**610**

*Steamfitters, Local 100,* 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975). Resolution of these issues must, however, await trial on the merits. Therefore, plaintiffs' motion for summary judgment on Counts II and III must be denied.

Defendants' motion for summary judgment on Counts II and III is based on their contention that they are entitled to benefit from the non-statutory labor exemption to the antitrust laws as a matter of law. See *Larry V. Muko, Inc. v. Southwestern Pennsylvania Building & Construction Trades Council,* Civil No. 77–2259 (3rd Cir., filed August 11, 1978), *vacated,* Civil No. 77–2259 (3rd Cir., filed October 12, 1978).[3] As discussed previously, the availability of this exemption to these defendants cannot be determined until the § 8(e) allegations are resolved. Therefore, defendants' motion for summary judgment on Counts II and III must be denied.

An appropriate order will be entered.

---

**3.** This case has been set for rehearing by the Third Circuit en banc on May 17, 1979.