**KANE GAS LIGHT AND HEATING COMPANY, Plaintiff,**

v.

**PENNZOIL COMPANY, Defendant.**

**Civ. A. No. 82–51 ERIE.**

United States District Court, W.D. Pennsylvania.

June 20, 1984.

---

John A. Bowler, John W. English, Erie, Pa., for plaintiff.

Louis Emanuel and Samuel W. Braver, Buchanan & Ingersoll, P.C., Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

Plaintiff has moved for partial summary judgment as to one cause of action of its multiple count complaint. Partial summary judgment is interlocutory in nature, it is not final unless certified by the court as such under Fed.R.Civ.P. 54(b), and does not terminate the action as to any of the claim or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties.

With respect to Fed.R.Civ.P. 56(d) it is provided that with respect to a case where judgment is not rendered on the whole case or for all the relief asked and a trial is necessary "... [The court] shall thereupon make an order specifying the facts that appear without substantial controversy and directing such further proceedings as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

The motion for partial summary judgment is based on an allegation of breach of a specific provision of an oil and gas lease between the parties, which is one of plaintiff's causes of actions pleaded.

The construction of the terms of a written contract is a matter solely for determination by the court. *Community College of Beaver County v. Society of the Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977); *Goldinger v. Boron Oil Co.*, 375 F.Supp. 400 (W.D.Pa.1974). Where the parties to an instrument have put their agreement in writing, all the prior negotiations, terms and conditions are merged into the writing and its meaning must be determined solely by its contents. *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982); *St. Paul Fire and Marine Insurance Co. v. United States Fire Insurance Co.*, 655 F.2d 521 (3d Cir.1981); *County of Erie v. American States Insurance Co.*, 573 F.Supp. 479 (W.D.Pa.1983). *E.C. Ernst, Inc. v. Koppers Company Inc.*, 520 F.Supp. 830 (W.D.Pa.1981); *Bakery and Confectionary Workers, International Union, Local No. 1213 v. The Great Atlantic and Pacific Tea Company, Inc.*, 357 F.Supp. 1322 (W.D.Pa.1973), *affd.* 491 F.2d 748 (3d Cir. 1974). The court's duty is to ascertain the intent of the parties as manifested in the language of the agreement. *Mohn v. American Casualty Co. of Reading*, 458 Pa. 576, 326 A.2d 346 (1974). Moreover, the court should read such provisions to avoid ambiguities, if the plain language of the contract permits. *Pennsylvania Manufacturers Association Insurance Co. v. Aetna Casualty & Surety Ins. Co.*, 426 Pa. 453, 233 A.2d 548 (1967).

The parol evidence rule, still alive and applicable despite its ancient lineage, bars the introduction of extrinsic evidence in aid of its construction unless an ambiguity in the terms is found. The existence of an ambiguity in a written contract is a matter of law to be determined by the court. *BBCI, Inc. v. Canada Dry Delaware Valley Bottling Co.*, 393 F.Supp. 299 (E.D.Pa.1975); *Magill v. Westinghouse Electric Corp.*, 327 F.Supp. 1097 (E.D.Pa. 1972).

If there is more than one permissible inference as to the intent to be drawn from the language employed, the question of the parties' actual intention is a triable

issue of fact. *Bear Brand Hosiery Co. v. Tights, Inc.*, 605 F.2d 723 (4th Cir.1979), but conflicting conclusions as to the interpretation of a written contract which is clear and unambiguous as to its terms will not create a material issue of fact to bar disposition by summary judgment. *Goldinger*, supra, at p. 413.

■ The provision of the contract to be construed is contained in the lease as follows:

2. The Lessee is required to drill at least nine (9) oil wells within one (1) year from the date of this lease to a depth to test the Bradford third sand, and have said wells in production within two years from the date hereof. In the event that any of said wells do not produce or continue to procuce in paying quantities, then each remaining producing oil well will hold by production twelve (12) acres and each producting gas well will hold thirty (30) acres. The said acreage to be held is to be measured as nearly as possible in the form of squares around said well or wells with lines of said squares paralleled to the lease lines.

An oil well is to be defined in this lease as a well that produces more revenue from oil during the first year of its production than the revenue received from the gas; and a gas well is a well which produces more revenue from gas during the first year of its production than from oil.

There is no dispute as to the fact that the defendant has drilled only one well, identified as E.A. Johnson Well No. 12 on the leased premises, and that defendant has never put the well into production.

The defendant opposes the motion by, *inter alia,* reliance on the doctrines of Restatement, Contract 2d, Sec. 261, Discharge by Supervening Impracticability, and Sec. 265, Discharge by Supervening Frustration. In support of both doctrines it advances evidentiary support for the proposition that later discovered results from drilling in a neighboring tract, and from drilling in the area in the same geological formation led it to the decision that it would not be productive to drill on the leased tract. Nevertheless, the Restatement sections previously cited which excuse performance both end with the phrase "unless the language or the circumstances indicate the contrary."

A great deal of the briefs of counsel refer to the use and definition of the term "produce in paying quantities." Most of those arguments are inapplicable to the question before us. We do not consider the unilateral determination that less than "paying quantities" would be produced there to be determinative of our question of interpretation. They do not produce an ambiguity here, they remove an arguable area. Rather than support the argument of an implied condition or a basic unspecified contractual assumption, they demonstrate to the court that the fact that such a probability was in the minds of the parties at the time of the execution of the contract. The language "In the event that any of said wells do not produce or continue to produce in paying quantities, then each remaining producing oil well will hold by production twelve acres...".

The parties contemplated the situation of failing to produce in paying quantities, but did not thereby terminate the obligation to drill. The decision not to drill was unilateral on the part of the defendant. In this highly risky and speculative business it is natural to assume that certain wells will be unproductive. What the plaintiff bargained for was the drilling of at least nine wells within one year. This was part of its bargain and part of the consideration for the grant of the lease. There is nothing in the "paying quantities" language of the lease to excuse the obligation to drill.

We are dealing with the sole question of the unconditional obligation to drill expressed in the contract. There are no genuine and material issues of fact with respect to the breach of that obligation. Much of the evidentiary material supplied by the parties is irrelevant to that issue or excluded by the parole evidence rule. In particular, the presentation of additional evidentiary material in the reply brief was

improper; in the first place it should have been filed with the record and not included in a brief; in the second place all evidentiary material should be filed with the motion; to allow this practice would be to permit a practice of "sandbagging", perhaps allowable in poker, but not proper in a lawsuit.

We have not relied on any extraneous material filed in reaching this conclusion. Our conclusion is based solely on the facts herein recited as established without contradiction.

Much of the material on the economic wisdom of proceeding to drill may be relevant to the ultimate issue of damages, and the other issues remaining to be tried.

For the purpose of the trial of this action, we hold that the defendant has breached the term of the lease agreement by not drilling the nine required wells and putting them into production.