## Budco Theatres Inc. v. Haisfield Real Estate Partnership

*Lewis A. Grafman,* for plaintiff.
*Joseph L. Higgins,* for defendant.

WOOD, *J.,* October 25, 1989 —

## FINDINGS OF FACT

(1) Plaintiff Budco Theatres is a Pennsylvania corporation with its principal place of business at 111 Chestnut Street, Philadelphia, Pennsylvania 19106.

(2) Defendant, Haisfield Real Estate Partnership, is a Pennsylvania partnership with an office at the Gateway Shopping Center at Route 202 South on Valley Forge Road, Tredyffrin Township, Pa.

(3) Edward Haisfield is the managing general partner of defendant.

(4) Defendant acquired title to the Gateway Shopping Center on or about September 20, 1979.

(5) Plaintiff leases space from defendant in the Gateway Shopping Center. Plaintiff uses the space to show movies and presently has three movie screens in operation in its theatre in the Gateway Shopping Center.

(6) The lease agreement between Haisfield and Budco expires on December 31, 1993. It gives Budco the option of three renewal periods of 10 years each.

(7) Section 12 of the lease, titled "Interior Alterations" provides as follows:

### *"12. Interior Alterations"*

"(a) Tenant may, at its expense, make such alterations and improvements to the demised premises and install interior partitions as it may require, provided that the written approval of the

landlord be first obtained, which approval will not be withheld unreasonably . . . "

(8) Over a period of several years, Budco has wanted to add additional screens, and to this end has submitted plans of interior alterations to Haisfield.

(9) Budco presently wants to increase the theatre's number of movie screens from three to five. To do this, they will need to make interior alterations only. These alterations will reduce seating capacity from 1,300 to 958, but will increase revenue due to more movie choices.

(10) Budco intends to pay for all interior alterations, pursuant to section 12 of the lease.

(11) Haisfield has turned down all of Budco's requests to expand or renovate, including the latest plan. On June 1, 1987 Haisfield sent a letter to Budco which stated:

"In reference to your letter of May 29, 1987, *no* we *DO NOT* approve any additions, changes, interior alterations and/or increases in the number of auditoriums as presently proposed by you."

(12) Haisfield's only stated reason for rejecting Budco's plans is that the interior alterations will create a parking problem in the Gateway Shopping Center. Haisfield is concerned that increased parking will offend his other tenants and cause them to move out. However, the alterations should not increase the parking burden, and may in fact lessen it.

(13) Budco claims that Haisfield violated section 12 of the lease because he has unreasonably withheld his approval of Budco's plans.

(14) In addition, Budco claims that Haisfield violated section 3 of the lease because of his continued refusal to repair the movie theatre's roof.

(15) Section 3 of the lease reads as follows:

*"3. Repairs, Ordinances and Violations."*

. . .

"(b) The landlord will keep in repair the exterior of the demised premises including the roof thereof, except any doors or windows, provided that tenant shall give landlord written notice of the necessity of such repairs, and provided that the damage thereto shall not have been caused by negligence of tenant, in which event tenant shall be responsible therefor. Landlord's obligation with respect to repairs to demised premises shall be only as expressly set forth in this paragraph."

(16) On several occasions in 1986, 1987 and 1988 Budco notified Haisfield both in writing and orally that the roof of the leased premises was leaking and causing water damage to the interior of the theatre.

(17) The leaking roof caused extensive water damage in the movie theatre. Budco has closed entire auditoriums due to leaking, placed plastic bags over seats and roped off seating sections. In addition, ceiling tiles are saturated and buckling and leaking has been found in the ladies room.

(18) In response to Budco's demands to repair the roof, Haisfield temporarily tarred and patched the roof.

(19) In or about December 1987, Budco notified Haisfield that the tar and patching did not stop the leaks.

(20) At the end of June 1988, Haisfield installed new roofing material over the old roof.

(21) In August 1988, Budco again notified Haisfield that the roof still was not fixed.

(22) Due to the blistering and saturation of the insulation and failure to seal the roof, the only way to correct the problem is to remove the roof and build a new one.

(23) Haisfield refuses to remove the old roof and replace it at his cost.

(24) In addition, Budco gave written notice to Haisfield in August 1988 about flooding from the drain outside the fire exits.

(25) Budco asks that Haisfield repair the drain; Haisfield refuses to do so.

(26) Budco claims the following as damages incurred from Haisfield's withholding approval on Budco's interior alteration plan:

| | |
|---|---|
| $601,523.00 | Total Lost Box Office for Two Years |
| | −50 percent to Film Rental |
| 300,761.00 | Lost Film Profit |
| + 112,785.00 | Lost Concession Profit (concession sales equal one-quarter box office; profit is 75 percent of sales) |
| 415,546.00 | *Total Lost Profit* |
| - 48,121.48 | Two years 8 percent Percentage Rent to Landlord |
| - 20,000.00 | Two Years Advertising Expenses |
| - 144,020.40 | Two Years Amortization - ($500,000 cost of construction, 12-percent interest, 15-year term) |
| $201,403.76 | *Damages* |

(25) A fair attorney's fee for the services rendered to Budco in this matter is, at a minimum, $15,000.

## DISCUSSION

The first issue is whether Haisfield's consent to Budco's interior alteration plan was "unreasonably withheld."

Section 12 of the lease does not appear to be ambiguous, nor susceptible to two or more reasonable interpretations: *Thermice Corp. v. Vistron Corp.*, 528 F.Supp. 1275 (1981), aff'd 688 F.2d 825 (1982). Thus, the lease provisions in section 12 and

the parties' obligations under this section can be clearly understood: *Lyncott Corp. v. Chemical Waste Management Inc.*, 690 F.Supp. 1409 (1988); *Kane Gas Light & Heating Co. v. Pennzoil Co.*, 587 F.Supp. 910 (1984). The provisions in section 12 allow Budco to make well-planned alterations and improvements in the theatre as long as Budco gives Haisfield written notice. Haisfield's consent is required, but it may not be "withheld unreasonably."

I have not come across any case law which interprets "withheld unreasonably" in this context.

Haisfield's reason for rejecting Budco's plans is his belief that the theatre expansion will place an increased burden on parking in the Gateway Shopping Center. However, the evidence is that, at any one time, the number of available seats in the theatre (and hence the number of potential parkers, if you will) will be *reduced*. There will no doubt be a greater volume over a large period of time, but section 10 of the lease contemplates *some* theatre parking and, indeed, seems to allocate at least a fair share of 600 spaces to the theatre. Hence Haisfield's objections seem unreasonable not only generally, but also in terms of his own obligations under the lease. He has clearly breached section 12 of the lease, and will be ordered to allow Budco to follow through with their plans.

Haisfield's continual rejection of Budco's interior alterations caused Budco to lose profits due to their inability to compete effectively with other area theatres. Under Pennsylvania law, lost profits can be recovered as damages where they are calculated with reasonable certainty and are the natural and probable consequence of the wrong complained of: *Neville Chemical Co. v. Union Carbide Corp.*, 294 F.Supp. 649 (1968), aff'd, 422 F.2d 1205 (1968); *Delahanty v. First Pennsylvania Bank, N.A.*, 318

Pa. Super. 90, 464 A.2d 1243 (1983). Here, Budco presented damage figures which appear to be causally related to Haisfield's unreasonable intransigence. Therefore, the court will award Budco $201,403.76 in lost profits.

In addition, there is a question whether Haisfield should pay for Budco's attorney's fees under section 23 of the lease.

### "23. Attorney's Fees"

"If by reason of the default of either party, it becomes necessary for the other party to employ an attorney to enforce this lease or to collect rent or other sums due hereunder, then such defaulting party shall pay unto the other all costs of court and attorney's fees reasonably incurred in this connection."

Under Pennsylvania law, a plaintiff may collect attorney's fees as part of a damage award: *Ranco Indus. Products Corp. v. Dunlap,* 595 F.Supp. 823 (1984), 776 F.2d 1135 (1985). Furthermore, an agreement to pay such fees will be enforced: *Spickler v. Lombardo,* 32 Somerset Leg. J. 16, 32 (1976).

Budco presented as evidence a detailed schedule of legal fees which it incurred from July 1987 to June 1989 for the roof and interior alterations litigation. These costs can be recovered as damages if they were "reasonably incurred." The standards for attorney's fees in Pennsylvania can be found in the Pennsylvania Rules of Professional Conduct, 1.5, to wit: a fee should not be "clearly excessive . . ." and should be proportional to "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." The fees in this case were made necessary by Haisfield's unwillingness for more

than two years to comply with the terms of the lease. Not only are these fees reasonable, but they also adequately reflect the work involved for Budco's litigation. Therefore, I will award Budco $15,000 for attorney's fees.

Budco also contends that Haisfield should be forced to pay for repairs to the roof of the demised premises. Under section 3(b) of the lease, Haisfield is responsible for such repairs:

"The landlord will keep in repair the exterior of the demised premises including the roof thereof . . ."

It is necessary to replace the entire roof because long-term neglect has created a problem which cannot be fixed by repair. Budco may start the roof replacement and deduct the cost from their rent: *Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897 (1979). However, Budco may deduct no more than $79,200, which was the lowest bid given by a roofing company in 1988.

Budco also complains of a problem with a drain. Budco may repair the drain if they wish, in order to prevent water from entering the theatre, but they will do so at their own expense. There is scant evidence of what repairs would be necessary, let alone how much they will cost.

## CONCLUSIONS OF LAW

(1) The court has jurisdiction of the cause of action, and the parties are properly before the court.

(2) Haisfield has unreasonably withheld his consent to Budco's planned alterations and expansion.

(3) Budco is entitled to $201,403.76 for lost profits which it incurred while Haisfield withheld his approval of Budco's alteration plans.

(4) Budco may replace the roof at Haisfield's

expense, except that Haisfield will not have to contribute more than $79,200 to that cost.

(5) Budco may repair the drain at its own cost.

(6) Budco is entitled to reasonable attorney's fees in the amount of $15,000 and may submit a bill of court costs within a reasonable time after conclusion of this matter.

## DECREE NISI

And now, October 25, 1989 plaintiff may begin interior alterations on the theatre, as per the plans in evidence. In addition, plaintiff is entitled to $201,403.76 in damages for lost profits due to defendant's two-year rejection of plaintiff's interior alteration plan.

Plaintiff may begin roof replacement immediately and may deduct up to $79,200 of the cost thereof from its rent. Plaintiff may repair the drain at its own cost.

Furthermore, plaintiff is entitled to reasonable attorney's fees in the amount of $15,000.